UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED JAY JACKSON,<br><br>            Plaintiff,<br><br>    v.<br><br>L. D. GRIFFITH,<br><br>            Defendant. | Case No. 1:20-cv-00073-SKO (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS CLAIMS AND TO PROCEED ON SINGLE COGNIZABLE CLAIM**<br><br>(Doc. 19)<br><br>21-DAY OBJECTION PERIOD<br><br>Clerk of the Court to Assign a District Judge |

      Plaintiff Fred Jay Jackson is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

      Plaintiff filed his second amended complaint on June 10, 2021. (Doc. 19.) For the reasons set forth below, the Court finds that Plaintiff's second amended complaint states a cognizable due process claim against Defendant Griffith, but does not state any other cognizable claims against Defendant Griffith. Given that Plaintiff has received two opportunities to amend, the Court finds that further amendment would be futile. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir. 2012). Therefore, the Court recommends that the non-cognizable claims be dismissed.

//

//

//

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## II. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal

2

quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### III.  DISCUSSION

### A. Plaintiff's Allegations

Plaintiff appears to have filed an action for medical negligence in state court in which summary judgment was granted in favor of the defendant(s). (*See* Doc. 19 at 7.) Prior to granting summary judgment, the state court denied Plaintiff's request to appoint a medical expert to assist him at public expense. (*See id*. at 6-9.) Plaintiff alleges that the trial court violated court rules and state laws in denying his request. (*See id.* at 5-6, 12.) Plaintiff appealed the summary judgment order, and the California Court of Appeal, Fifth Appellate District, and California Supreme Court upheld the trial court's decision. (*See id.* at 6, 10.)

Plaintiff's medical negligence action appears to have stemmed from a "transrectal ultra sound needle biopsy" performed by named defendant Lyle D. Griffith. (*See* Doc. 19 at 4, 9-10.) Plaintiff alleges that because of the procedure, he developed "uncontrol[led] urine leakage." (*Id.* at 4.)

Plaintiff contends he was "clearly documented as being legally blind at the time" of the procedure. (Doc. 19 at 10.) He alleges that he "could not read the medical consent form given to him to sign" and that defendant "deliberately ignored" his vision disability. (*Id*.) Plaintiff contends he was "never read the contents of" the consent form. (*Id*.)

Plaintiff also states that Dr. Griffith "intentionally failed to adequately disclose any other viable alternative other available medical options such as an MRI or liquid MRI (non-invasive) procedure." (*Id*.) Plaintiff contends that had he been advised of the alternative, he "would have 100% decline[d] undergoing a procedure involving the cutting out of 12 simple tissue parts of his prostate." (*Id*.) Plaintiff contends he "was never informed of any risk or side effects of urine leakage with the surgical procedure." (*Id*.)

Plaintiff seeks the following relief:

> Overruled and remand to Trial Court on the substantive 14th [] Amendment claims violation of plaintiff and the trial court judge which are set forth in this second Amended Complaint or appoint Counsel to bring clarity to the issues plaintiff attempts to raise in his reasoning by way of his Request for Appoint of Counsel which appear an exception Circumstance.

(Doc. 19 at 12.)

Based on the foregoing, Plaintiff raises due process, equal protection, and access to court claims under the Fourteenth Amendment to the U.S. Constitution. (Doc. 19 at 5, 10.) He also raises a claim under the California Constitution as to his first claim for relief. (*Id*. at 5.)

### B. Claims for Relief

In his first claim[1] for relief, Plaintiff cites to California state statutes, rules, and case law. (Doc. 19 at 5-6.) He contends his federal and state constitutional rights were violated "resulting in a miscarriage of justice" when the state trial, appellate and supreme courts "ignored the due process/procedural process violations and denied plaintiff access to the court and equal protection of the law." (*Id*. at 6.) Plaintiff provides facts concerning actions taken in the trial court (*id*. at 6-

---

[1] Plaintiff identified the following violations: "California Constitution article VI § section 13 due Process/equal Protection, access to court and Procedural Process violation of law resulting in miscarriage of justice, (14th) U.S. Constitution 14th amendment due process/equal protections rights abridged by court." (Doc. 19 at 5.)

4

8), and contends those actions violated "procedural process" (*id*. at 8). Plaintiff contends he was entitled to the assistance of a court-appointed expert at no cost, and because he was denied a hearing, a miscarriage of justice resulted. (*Id.* at 9.) Plaintiff contends Dr. Griffith "deliberately ignored" his "vision disability" and failed to "adequately disclose other available medical options" versus the "ultra-sound transrectal guided needled biopsy" the doctor performed. (*Id*. at 10.) Plaintiff contends he would not have undergone the procedure had he been aware of the available alternatives. (*Id*.) Plaintiff concludes, "[a]ll of the above alleged substantive due process violations were raised at trial court, Court of Appeal and Supreme Court levels." (*Id*.)

In his second claim[2] for relief, Plaintiff recounts facts from December 2014 and January 2015 that led to Plaintiff undergoing a biopsy of his prostrate. (Doc. 19 at 10.) Plaintiff names Dr. Griffith in his individual capacity, contending Dr. Griffith was acting under color of state law when the doctor failed to ensure Plaintiff understood the consent form despite a visual disability and failed to advise Plaintiff regarding the risks and side effects of the biopsy and "any other medical options/alternatives." (*Id*. at 10-11.) Plaintiff claims "a liberty interest in receiving such information." (*Id*.)

1. Procedural Due Process

The Fourteenth Amendment protects persons from deprivations of life, liberty, or property without due process of law. U.S. Const. amend. XIV. When a protected interest is implicated, the Due Process Clause provides certain procedural guarantees. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). The amount of process or specific procedures required vary by context and the particular interest at stake. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, Plaintiff does not state a cognizable procedural due process claim. Plaintiff's allegations do not show that the state court denied him adequate process in denying his request to appoint a medical expert to assist him in litigating his medical negligence case. As the Court explained in its First Screening Order and Second Screening Order, parties in civil actions have

---

[2] Plaintiff identified the following violations in his second claim for relief: "Plaintiff's Due Process Fourteenth amendment rights to be free from unjustified intrusion of my body, to refuse unwanted medical treatment, and to receive sufficient information to exercise an inform decision to accept or reject proposed treatment and alternative treatment." (Doc. 19 at 10.)

1 no right under federal law to the appointment of experts at public expense. *See, e.g., Newson v.*
2 *Shaw*, No. 2:18-cv-02010-CKD, 2019 WL 5079545, at *2 (E.D. Cal. 2019), *Medina v. Morris*,
3 No. 3:09-cv-00169-JAH-KSC, 2014 WL 12686742, at *3 (S.D. Cal. 2014); *see also Boring v.*
4 *Kozakiewicz*, 833 F.2d 468, 474 (3d Cir. 1987) ("no statutory authority . . . for payment of expert
5 witness fees in civil suits").

6 Plaintiff contends that the state court violated various court rules and state laws in denying
7 his request for a court-appointed expert. However, and as explained in the Court's Second
8 Screening Order, whether Plaintiff has a right to an expert under state law, or whether officials
9 violated state law in denying his request for an expert, does not determine whether Plaintiff has a
10 right to an expert under the Due Process Clause of the Fourteenth Amendment. Plaintiff has no
11 such right under the Due Process Clause.

12 To the extent Plaintiff's complaint can be understood to state a claim against the state
13 trial, appellate and supreme courts, or the judges in those courts,[3] those entities are not named as
14 defendants in this action. Nor could they be. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58,
15 70 (1989) (holding that "'arms of the State' for Eleventh Amendment purposes" are not liable
16 under § 1983); *Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923, 928 (9th Cir. 2017) (Federal
17 court actions against agencies or instrumentalities of a state, including state courts, are also barred
18 by the Eleventh Amendment); *Blount v. Sacramento County Superior Court*, 559 Fed.Appx. 623,
19 623 (9th Cir. 2014) (same); *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161
20 (9th Cir. 2003) ("Plaintiff cannot state a claim against the Sacramento County Superior Court …
21 because such suits are barred by the Eleventh Amendment); *Demoran v. Witt*, 781 F.2d 155, 156
22 (9th Cir. 1986) ("Courts have extended absolute judicial immunity from damage actions under 42
23 U.S.C. § 1983 not only to judges but also to officers whose functions bear a close association to
24 the judicial process"); *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc) ("Judges
25 and those performing judge-like functions are absolutely immune from damage liability for acts
26 performed in their official capacities"); *see also Miller v. Davis*, 521 F.3d 1142, 1145 (9th Cir.

---

[3] Plaintiff's second amended complaint identifies a single named defendant, L.D. Griffith. (Doc. 19 at 4-5.) However, throughout the amended complaint Plaintiff consistently references the state courts and their purported errors. (*See, e.g.*, Doc. 19 at 6, 11, 12.)

2008); *Partington v. Gedan*, 961 F.2d 852, 860 n.8 (9th Cir. 1992); *Houghton v. Osborne*, 834 F.2d 745, 750 (9th Cir. 1987).

To the extent Plaintiff is attempting to appeal the results of his state court action, he cannot do so because the *Rooker-Feldman* doctrine applies. Simply stated, federal district courts do not hear "appeals" from state court actions. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 474-82 (1983) (a federal district court lacks authority to review final determinations of state or local courts because such review can only be conducted by the Supreme Court of the United States); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

As the Court noted in its Second Screening Order, Plaintiff also fails to link named defendant Dr. Griffith to his procedural due process claim as he does not contend that Dr. Griffith in any way caused the denial of his request for a court-appointed expert. A plaintiff must show *how* the defendant's actions or failures to act caused the constitutional violation of which he complains. *See Johnson v. Duffy*, 588 F.2d at 743. Despite being afforded the opportunity to cure this deficiency following the Court's Second Screening Order, Plaintiff has not shown that Dr. Griffith caused the trial court to deny Plaintiff's request for a court-appointed expert in Plaintiff's medical negligence action. In sum, Plaintiff has failed to state a claim for a violation of his procedural due process rights.

### 2. Equal Protection

"The Equal Protection Clause [of the Fourteenth Amendment] requires the State to treat all similarly situated people equally." *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citation omitted). To state an equal protection claim under section 1983, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (citations omitted). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis removed) (citation omitted).

"The first step in equal protection analysis is to identify the state's classification of groups." *Country Classic Dairies, Inc. v. State of Mont., Dep't of Commerce Milk Control*

*Bureau*, 847 F.2d 593, 596 (9th Cir. 1988). "To accomplish this, a plaintiff can show that the law is applied in a discriminatory manner or imposes different burdens on different classes of people." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995).

"The next step … [is] to determine the level of scrutiny." *Country Classic Dairies*, 847 F.2d at 595. "Classifications based on race," for example, "are subject to strict scrutiny," *Freeman*, 68 F.3d at 1187, whereas classifications based on gender are subject to "intermediate scrutiny," *Navarro v. Block*, 72 F.3d 712, 716 (9th Cir. 1995) (citations omitted). Classifications not based on a "suspect" class like race or gender are subject to "rational-basis review." *Romer v. Evans*, 517 U.S. 620, 631 (1996); *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (citations omitted). Under this standard, a classification must have a rational relationship to a legitimate state interest to comply with the Equal Protection Clause. *See Romer*, 517 U.S. at 631-32.

If an action does not involve an identifiable class, a plaintiff may still establish an equal protection claim if she "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted); *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008).

A plaintiff must prove two distinct elements to prevail on a § 1983 claim. He must "allege the violation of a right secured by the Constitution and laws of the United States," and must also "show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Regarding the latter, Plaintiff alleges Dr. Griffith acted "under color of state law in the scope of his employment." (Doc. 19 at 11.)[4] Although this allegation is conclusory, at the pleading stage and construed liberally, the Court finds that Plaintiff has sufficiently alleged that the defendant was acting under color of state law. As to the former, however, Plaintiff fails to state a cognizable equal protection claim.

First, he has not shown that Dr. Griffith "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class," *Barren v. Harrington*, 152 F.3d at 1194, even assuming the protected class at issue is one with visual disabilities. Second,

---

[4] Plaintiff continues to identify Griffith as "a private practice urologist" (Doc. 19 at 4).

1  Plaintiff has failed to allege he was intentionally treated differently from others similarly situated
2  and there was no rational basis for the difference in treatment. *Vill. of Willowbrook v. Olech*, 528
3  U.S. at 564. In other words, Plaintiff does not allege he was treated differently than other visually
4  disabled individuals who could not read the consent form themselves.

### 3. Access to Courts

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977), limited in part on other grounds by *Lewis*, 518 U.S. at 354; *Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017) ("The most fundamental of the constitutional protections that prisoners retain are the First Amendment rights to file prison grievances and to pursue civil rights litigation in the courts, for '[w]ithout those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices'" (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005)); *Phillips v. Hust*, 588 F.3d 652, 655 (9th Cir. 2009); *Ching v. Lewis*, 895 F.2d 608, 609–10 (9th Cir. 1990) (per curiam) (holding that a prisoner's right of access to the courts includes contact visitation with his counsel).

This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828; *see also Phillips*, 588 F.3d at 655; *Madrid v. Gomez*, 190 F.3d 990, 995 (9th Cir. 1999) (explaining that the right is limited, and that prisoners need only have the minimal help necessary to file legal claims). The right, however, "guarantees no particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. … [It is this capability] rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. *Lewis*, 518 U.S. at 356-57. Prison officials may select the best method to ensure that prisoners will have the capability to file suit. *See id*. at 356. Prisons "might replace libraries with some minimal access to legal advice and a system of court-provided forms … that asked the inmates to provide only the facts and not to attempt any legal analysis." *Id*. at 352. Under this formulation, the Ninth Circuit decisions that concluded that

prisons have an obligation to provide photocopies and ink pens, where such services and materials were necessary to filing an action or appeal, are arguably still good law. *See Hiser v. Franklin*, 94 F.3d 1287, 1294 n.6 (9th Cir. 1996); *Allen v. Sakai*, 48 F.3d 1082, 1089–90 (9th Cir. 1995). *See also Hebbe v. Pliler*, 627 F.3d at 342-43.

To set forth a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury—a jurisdictional requirement that flows from the standing doctrine and may not be waived. *See Lewis*, 518 U.S. at 349; *Madrid*, 190 F.3d at 996. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348 (citation & internal quotation marks omitted); *see also Hebbe*, 627 F.3d at 342-43; *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (explaining that "[f]ailure to show that a 'non-frivolous legal claim ha[s] been frustrated' is fatal" to a claim for denial of access to legal materials) (citing *Lewis*, 518 U.S. at 353 & n.4); *Madrid*, 190 F.3d at 996. Delays in providing legal materials or assistance that result in actual injury are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Lewis*, 518 U.S. at 362.

Here, Plaintiff does not allege a cognizable access to courts claim. Plaintiff does not contend he was denied access to the law library or his legal materials, nor does he allege any interference with his ability to file an action in the state courts or in this Court. He has not established he suffered an actual injury—his claim appears to be a disagreement with the trial court's ruling in his state court medical negligence action.

4. <u>Substantive Due Process</u>

The Ninth Circuit has held that "the Fourteenth Amendment substantively protects a person's rights to be free from unjustified intrusions to the body, to refuse unwanted medical treatment and to receive sufficient information to exercise these rights intelligently." *Benson v. Terhune*, 304 F.3d 874, 884 (9th Cir. 2002) (citations omitted). In *White v. Napoleon*, which the Ninth Circuit cited favorably in *Benson*, 304 F.3d at 884, the Third Circuit held that "[p]risoners have a right to such information as is reasonably necessary to make an informed decision to accept or reject proposed [medical] treatment, as well as a reasonable explanation of the viable

alternative treatments that can be made available in a prison setting." 897 F.2d 103, 113 (3d Cir. 1990); *see also Pabon v. Wright*, 459 F.3d 241, 250 (2d Cir. 2006) (prisoners have "a liberty interest in receiving such information as a reasonable patient would require in order to make an informed decision as to whether to accept or reject proposed medical treatment") (citing *White*, 897 F.2d at 113).

In his second claim for relief, Plaintiff has provided sufficient facts to state a cognizable substantive due process claim. He alleges Dr. Griffith intentionally failed to read Plaintiff the consent form, failed to inform him of the risks and side effects of the prostrate biopsy procedure, and failed to inform him of the alternative medical options such as an MRI. Plaintiff also contends he would have "100%" declined the procedure had he been made aware of the risks and side effects and the medical alternatives. *Benson v. Terhune*, 304 F.3d at 884; *White v. Napoleon*, 897 F.2d at 113.

Additionally, as noted above, despite the conclusory nature of Plaintiff's assertion that Dr. Griffith acted under color of state law, liberally construing the second amended complaint, the Court finds that Plaintiff has sufficiently alleged, at this stage of the proceedings, that the defendant was acting under color of state law.

In sum, as to his first claim for relief, Plaintiff has failed to state a cognizable claim upon which relief can be granted. The Court will recommend his first claim be dismissed. As to Plaintiff's second claim for relief, the Court will recommend the action proceed as to that claim only.

### IV.   CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, the Court finds that Plaintiff's second amended complaint states a cognizable substantive due process claim against Defendant Griffith. However, Plaintiff's second amended complaint does not state any other cognizable claim against Defendant Griffith. Given that Plaintiff has received to opportunity to amend (Docs. 11, 16), the Court finds that further amendment would be futile. *See Akhtar v. Mesa*, 698 F.3d at 1212-13.

Accordingly, the Court RECOMMENDS that:

1. Plaintiff's first claim for relief against Defendant Griffith be DISMISSED; and

2. Plaintiff be permitted to proceed on his second claim for relief against Defendant Griffith.

The Court DIRECTS the Clerk of the Court to assign a district judge to this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(1). **Within 21 days** of the date of service of these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff's failure to file objections within the specified time may result in waiver of his rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **April 12, 2022**                             /s/ *Sheila K. Oberto*
                                        UNITED STATES MAGISTRATE JUDGE